Richard C. Hoffman et al., Appellants, v. Alfred P. Schwan et al., Appellees.

Gen. No. 42,052.

Heard in the third division of this court for the first district at the October term, 1941. Opinion filed December 4, 1941.

L. A. MITCHELL and ROYAL J. SCHMIDT, both of Chicago, for appellants.

GARIEPY & GARIEPY, of Chicago, for appellees; FRED A. GARIEPY, OWEN RALL and JOHN SPALDING, all of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

Plaintiffs filed their complaint in the superior court of Cook county, for an injunction restraining the defendants from erecting a building on a tract of land in the City of Evanston. Defendants answered and plaintiffs filed a reply. A decree was entered granting the relief as prayed. Within 30 days defendants pre-

sented a motion, supported by a petition. The court reconsidered the matter, vacated the decree and dismissed the complaint for want of equity. Plaintiffs appealed and ask that the decree be reversed and the cause remanded with directions to enter a decree in accordance with the prayer of the complaint. No testimony was taken. The facts appear from the complaint, the answer, the reply, the amended petition to vacate and the answer thereto. The parties are in substantial agreement as to the facts.

On April 7, 1922, a plat of R. Clarence Brown's Evanston Community Golf Subdivision was recorded in the recorder's office of Cook county as document No. 7455989. The subdivision contains 50 lots. It is bounded on the west by Asbury avenue, on the east by Ridge boulevard, on the south by an alley and on the northwest by the Evanston Community Golf Course. This golf course is operated on real estate owned by the Sanitary District of Chicago. The street at the western extremity of the subdivision runs north and south and is known as Asbury avenue. The frontage on Asbury avenue from the alley north to the golf course is approximately 176.82 feet. From the corner of Asbury avenue and the golf course, the northwest boundary of the subdivision runs in a northeasterly direction for approximately 418 feet. The north boundary of the subdivision then runs in an easterly direction approximately 772 feet to Ridge boulevard. The plat shows that Bryant avenue, 66 feet wide (approximately 320 feet east of Asbury avenue), runs in a northerly and southerly direction between the alley and the golf course, and that Colfax street, also 66 feet wide, runs in an easterly and westerly direction between Bryant avenue and Ridge boulevard. Lots 1 to 4 face west on Asbury avenue and run to a depth of 152 feet. Lots 5 to 12 face east on Bryant avenue. Lots 5 to 10 and the south half of lot 11 run to a depth of 152 feet. The north half of lot 11, and lot 12 run

to a depth of 132 feet. A 16 foot alley separates the lots facing on Asbury avenue and the lots facing on Bryant avenue. Lots 13, 14 and 15 face west on Bryant avenue to the north of Colfax street, and lots 16 to 21, inclusive, also face west on Bryant avenue and are to the south of Colfax street. Lots 22 to 31, inclusive, face north on Colfax street, and lots 40 to 50, inclusive, face south on Colfax street. Lots 32 to 36, inclusive, face east on Ridge boulevard to the south of Colfax street and lots 37 to 39, inclusive, face east on Ridge boulevard to the north of Colfax street. Defendants, Alfred P. Schwan and Grace E. Schwan, are the owners of lot 1. This lot is a triangular parcel, having a frontage on Asbury avenue of 36.82 feet. It runs to a depth of 152 feet on the south line to a 16 foot alley in the rear. It then extends 136 feet in a northerly direction to the golf course and then extends 158.70 feet in a southwesterly direction on an angle from the juncture of the alley and the golf course to Asbury avenue. It contains 13,135.80 square feet. Lot 1 has been resubdivided with the approval of the City of Evanston, into lots A and B, by a plat recorded November 16, 1939. Sublot B is the south 43 feet of lot 1, and takes up all the frontage on Asbury avenue. Sublot B has an area of 6,505.10 square feet. Sublot A consists of the remainder of lot A and has an area of 6,630.70 square feet. By a warranty deed, recorded on April 7, 1922, Mabel E. Kline, the then owner of all of the 50 lots, except lot 39, conveyed said lots, subject to certain conditions, which by the terms of said instrument were declared to be covenants running with said lots and to be binding as such until January 1, 1950. The deed established a building line restriction of 25 feet on all streets except Ridge boulevard, and a building line restriction of 30 feet on Ridge boulevard. The deed then recited that ''no building shall be erected on any of said lots other than a private dwelling house designed to be occupied by one family only, to-

gether with barns, garages, and other outbuildings thereon, and no private dwelling shall be erected on any of said lots in said subdivision having a frontage on any street other than Ridge avenue costing less than $5,000.00; and no private dwelling shall be erected on any of said lots having a frontage on Ridge avenue costing less than $7,000.00.'' The defendants took title to lot 1 by a deed recorded October 22, 1934, in and by the terms of which the conveyance to them was expressly made subject to the restriction contained in the deed from Mabel E. Kline. At the time of the conveyance to the defendants lot 1 was improved with a single family residence. On May 11, 1940, defendants made application to the building commissioner of Evanston for permission to construct a single family residence with garage attached on lot A. Plaintiffs objected to the granting of the permit. Following a hearing before the city council, that body on May 20, 1940, approved the granting of the permit, and on May 23, 1940, the permit was issued. Charlotte E. and Ethel Dieffenbacher own lot 2, having a frontage of 50 feet on Asbury avenue. Richard C. Hoffman and May D. Hoffman, his wife (plaintiffs) own lot 4, with a frontage of 45 feet on Asbury avenue. Lot 2 adjoins lot 1 and lot 4 adjoins the alley, which is the southern boundary of the subdivision. Esther L. Johnson, plaintiff, owns the north 20 feet of lot 6 and the south 20 feet of lot 7. Emma C. Johnson, plaintiff, owns the north 20 feet of lot 8 and the south 20 feet of lot 9. Robert H. Gault and Mary Louise Gault, at the time the complaint was filed owned the north half of lot 10 and all of lot 11, 60 feet. They joined as plaintiffs. Since the suit was filed, the Gaults sold their property to Urban A. Lavery, who has not been made a party to the suit. Since the filing of the suit, Emma C. Johnson died but there has been no suggestion of her death. On or about May 15, 1940, the defendants began the construction of a single family residence upon sublot

1. On May 20, 1940, plaintiffs' attorneys advised defendants by registered mail that such construction was a violation of the restriction. Nevertheless, defendants continued with such construction until the complaint was filed on June 21, 1940. According to the answer filed on July 25, 1940, defendants had expended $3,000 in constructing the building. The amended petition filed February 13, 1941, states that defendants had expended $4,500 in constructing the building. The building, when completed, will cost $10,000.

The residence which stood on lot 1 at the time it was purchased by the defendants is now on that part of lot 1 known as sublot B. The area of sublot A is 6,630.70 square feet and of sublot B, 6,505.10 square feet. The area of the other lots in the subdivision, including those owned by the plaintiffs, is substantially the same as the area of either sublot A or sublot B, approximately 7,000 square feet. Lots 2 and 4, owned by plaintiffs Dieffenbacher and Hoffman, front on Asbury avenue. The properties owned by the other plaintiffs front on Bryant avenue and are directly east and southeast of lot 1. The lots on Bryant avenue do not face defendants' lot, but face east. From the amended petition, filed after the entry of the first decree, it appears that approximately 89 per cent of the owners of property in the subdivision had, since the entry of the decree sought to be vacated, consented to the completion of the structure on sublot A. There are two single family residences on lot 36, located at the corner of Ridge boulevard and Colfax street, which were erected in 1929. Lots 5 to 12, inclusive (facing east on Bryant avenue), have been improved with seven single family residences as follows: lot 5 and the south half of lot 6, frontage 60 feet; north half of lot 6 and south half of lot 7, frontage 40 feet; north half of lot 7 and south half of lot 8, frontage 40 feet; north half of lot 8 and south half of lot 9, frontage 40 feet; north half of lot 9 and south half of lot 10, frontage 40 feet;

north half of lot 10 and lot 11, frontage 60 feet; and lot 12, frontage 104.9 feet. These lots are located in the same block as lot 1, but front on the west side of Bryant avenue, three of them being owned by the original plaintiffs. Thus, more than one building, that is, portions of two separate buildings, have been maintained on lots 6, 7, 8, 9 and 10 for many years without objection by any of the owners of property in the subdivision.

Plaintiffs maintain that the words "no building shall be erected on any of said lots other than a private dwelling house designed to be occupied by one family only" prohibit the erection of more than one residence upon defendants' real estate. Defendants answer by stating that this language and the subsequent acts and conduct of the parties establish that it was not intended, or that it is at least doubtful that it was intended, to prohibit the erection of more than one single family residence on any one lot in the subdivision, and that the trial court properly dismissed the complaint. The deed and the plat were recorded on the same day, April 7, 1922. The deed describes the lots in the plat. We are of the opinion that the restriction was intended to limit one private dwelling house to a lot. The covenant also prohibits the erection of a dwelling house on Ridge boulevard costing less than $7,000 and on any other street costing less than $5,000. Apparently, the intent was to prevent an owner from placing more than one single family residence on a lot as laid out in the plat.

Plaintiffs urge that there is no such breach of the restriction as will bar plaintiffs from the relief asked. Defendants meet this argument by urging that the restriction is enforceable only on equitable principles, and if the construction contended for by the plaintiffs be adopted, then the plaintiffs themselves have violated the restriction or have acquiesced in the violation thereof, and are thus precluded from enforcing it

against the defendants. Defendants insist that the plaintiffs are either violating the covenant or have waived violation of it by others. Plaintiffs contend that there is no breach of the covenant on their part and that hence there can be no waiver. The building on lot 5 and the south half of lot 6 was erected in 1922. Three of the remaining buildings facing east on Bryant avenue, were erected in 1923, one was erected in 1924 and one in 1925. The residence on sublot B was erected in 1923; that on lot 2 in 1926 and that on lot 4 in 1927. Plaintiffs assert that the present result of the improvement of the Bryant avenue frontage is that seven residences have been constructed and maintained on lots 5 to 12, inclusive, where the covenant permits eight, and that the actual development shows two houses each with a frontage of 60 feet, four houses with a frontage of 40 feet and one house with a frontage of 104.9 feet. Plaintiffs also point out that the frontages are so divided amongst the various occupants that it is now impossible to erect the eighth house legally permissible without wrecking or moving six of the existing residences. Plaintiffs state that the restriction limits the aggregate number of houses in the 49 lots to 49; that there are now, excluding defendants' second building, 47 houses maintained on 48 lots; that seven lots on the west side of Bryant avenue have six buildings, two lots on Colfax street (24 and 25) have one building; one lot on Ridge boulevard (36) has two buildings; 38 lots (1 to 4 inclusive, 12 to 23 inclusive, 26 to 34 inclusive, 37 and 38 and 40 to 50 inclusive) have 38 buildings; that if lots 24 and 25, now occupied by one building were rearranged to accommodate an additional building, a valid possibility under the covenant, it would mean one more, making a total of 48; that if the buildings now occupying the west side of Bryant avenue, except on lot 12, were rearranged so that seven buildings could be maintained, the total would be brought to 49, the maximum number under

the covenant; that one lot (35) is vacant; that if a building were constructed on that lot it would bring the total number of houses to 50, and would for the first time violate the aggregate limit fixed by the covenant and then in the portion of the subdivision most remote from the *locus* under consideration. Plaintiffs lean heavily on the case of *Ewertsen v. Gerstenberg*, 186 Ill. 344, where the court said,

"We do not mean to say that an easement abandoned in part will be held as abandoned altogether, for where it is abandoned *pro tanto* only, and a material and beneficial part remains, it will be protected." Plaintiffs, in urging the applicability of the *Ewertsen* case to the facts in the case at bar, insist that a "material and beneficial part" of the easement remains. We agree that the doctrine of the *Ewertsen* case is clearly applicable to the two buildings on lot 36. This lot faces on Ridge boulevard and the western boundary thereof is approximately 674 feet from the eastern boundary of the lots facing east on Bryant avenue, and approximately 842 feet from the eastern boundary of the lots facing west on Asbury avenue. Hence, the lots owned by plaintiffs and defendants are not materially affected by the erection and maintenance of two residences on lot 36. Turning to the effect of the erection and maintenance of buildings allegedly in violation of the covenant in the immediate vicinity of plaintiffs' property, plaintiffs argue that it cannot be said that the value of the restriction has been destroyed; that the covenant allows and contemplates the aggregate number of 12 buildings on lots 1 to 12; that 11 are now maintained; that the permissible number of buildings can only be reached by wrecking or altering expensive improvements, and that the present conditions are better than those contemplated by the covenant.

Restrictions upon the use of property imposed as a part of a general plan for the benefit of the several

lots, give to the purchasers a right in the nature of an easement, which will be enforced in equity and upon equitable principles against the grantee of a lot. (*Curtis v. Rubin*, 244 Ill. 88.) At the time the plat was recorded, the subdivider intended that not more than one single family dwelling should be erected and maintained on a lot. That is the language of the deed which was recorded on the same day. In selling that part of the subdivision facing east on Bryant avenue (lots 5 to 12 inclusive) some of the lots were divided so that the owner acquired part of one lot and part of another lot. Thus, Robert H. Gault acquired the north half of lot 10 and all of lot 11; Esther Johnson acquired the north 20 feet of lot 6 and the south 20 feet of lot 7, and Emma C. Johnson acquired the north 20 feet of lot 8 and the south 20 feet of lot 9. Because of the splitting of the lots, portions of two separate buildings have been maintained on lots 6, 7, 8, 9 and 10 without objection by any of the owners of property in the subdivision. It is apparent that buildings have been erected and are being maintained on that part of the subdivision facing east on Bryant avenue contrary to the covenant that "no building shall be erected on any of said lots other than a private dwelling house designed to be occupied by one family." We agree that the violation of the covenant as to dwellings facing east on Bryant avenue, is purely technical. The plat contemplated not more than one single family dwelling on each lot. Although the lots facing east on Bryant avenue were divided so that portions of two separate buildings were erected and are being maintained on single lots, yet each such parcel embraces an area at least as great as that contemplated in the warranty deed of April 7, 1922. The residences built and maintained in that part of the subdivision facing east on Bryant avenue violate the letter but not the spirit of the covenant. The area of sublot A of lot 1 is 6630.70 square feet and that of sublot B is 6505.10 square feet.

The area of the other lots in the subdivision, including those owned by plaintiffs, is substantially the same as the area of lot A or lot B, approximately 7,000 square feet. The residence being erected on lot A by defendants is to cost $10,000. The requirements of the building code and zoning ordinance of the City of Evanston have been complied with in regard to fire protection, type of construction and setbacks. There is no claim that the completion of the structure will interfere with or impair the right of the property owners in the subdivision to adequate light, air, clear view, safety from fire and other hazards. We are of the opinion that the erection by defendants of the residence on sublot A of lot 1 is a technical violation of the covenant. Although it violates the letter of the covenant, it does not violate its spirit. The owners of the lots in the subdivision, including the plaintiffs, have not heretofore insisted on a literal interpretation of the language of the covenant and we perceive no reason why they should be permitted to do so at this time. All of these owners have recognized that a substantial compliance with the covenant is all that was required or expected. We agree with the contention of the plaintiffs that where there is a clear violation of a covenant, a court of chancery will enjoin such violation, even though there is no showing that the plaintiffs are damaged. We also agree with the plaintiffs that it is no defense to a complaint for an injunction that the defendants went ahead with their plans and expended a large sum of money. In such case the defendants take the risk of being compelled to raze the structure erected in violation of the covenant.

Under all the circumstances of this case, we are of the opinion that it would be inequitable to enjoin the defendants from proceeding with the completion of the single family residence now being constructed on sublot A of lot 1. The chancellor was right in dismiss-

ing the complaint for want of equity, and the decree of the superior court of Cook county is affirmed.

*Decree affirmed.*

HEBEL and KILEY, JJ., concur.