198

STANLEY P. OSINSKI et al., Plaintiffs-Appellees, v. EDWARD E. COLLINS, JR., et al., Defendants-Appellants.

Second District   No. 79-322

Opinion filed June 4, 1980.

Richard D. Shearer, of Shearer, O'Brien, Blood, Agrella & Boose, of St. Charles, for appellants.

Noel C. Davis and Roy J. Solfisburg, Jr., both of Aurora, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiffs, Stanley P. Osinski and Veronica B. Osinski, sought a declaratory judgment to invalidate a covenant which restricted the use of their property to one private residence. The defendants are numerous objecting property owners. The common grantor was made a defendant but failed to appear and a default was entered against him. Based on the pleadings and attached exhibits the trial court granted plaintiffs' motion for summary judgment, holding that the covenant was unenforceable as a matter of law. The defendants appeal. The underlying question is whether strangers to the covenant between the grantor and plaintiff have the right to enforce the covenant. This, in turn, depends on whether the grantor-covenantor intended the restriction to be for the benefit of neighboring lot owners or strictly for the grantor's personal benefit.

The complaint alleges, in substance, that the plaintiffs are the owners of property described by metes and bounds. It is referenced as "Lot 3A in Part of Guild's Subdivision" in a demonstrative exhibit attached to the complaint:

EXHIBIT "A"

C 12

SEE PAGE 40-8-20

The complaint further alleges that plaintiffs' property and the land of the defendants prior to July 26, 1949, was under the common ownership of Ami F. and Nancy Allen, who conveyed the common property to one Rullman as trustee; that on January 18, 1952, the trustee conveyed out by metes and bounds description property referenced on exhibit "A" as Lot 5 in part of Guild's Subdivision to the Willmans with a restriction in the deed providing that only *two* private residences could be constructed on the property; that on January 29, 1952, the trustee then made a conveyance to the Millers referenced on the exhibit as Lot 4 with the same two residence restriction; and that on May 9, 1952, the trustee conveyed to the Fowlers "Lot 13" under the same two residence restriction. Further, that thereafter conveyances to the various defendants continued to be made by metes and bounds descriptions with deeds which contained a *one* residence restriction; but that other adjacent properties owned by the trust shown as Allen's Crane Woods, Unit 2, on exhibit "A", and land "immediately adjacent to Grandma's Lane on the East and North (except the Hahn Property) were deeded out of the trust and had no restriction on the number of residences which could be built on the property." Also, that on October 1, 1955, the land which plaintiffs were later to acquire was deeded out of the trust by a deed which contained the provision that only one residence could be built, but that plaintiffs now have divided and sold part of their property and desire to build a second residence on the retained part.

The defendants in their answer denied the principal allegations in the complaint and alleged that all of Allen's Crane Woods, Unit 2 was specifically restricted to one residence and that "the land immediately adjacent to Grandma's Lane on the East and North were deeded out of trust with restrictions as to not more than one residence per acre."

It also appears from various deeds of conveyance attached to the answer that on August 25, 1954, the trustee conveyed a neighboring tract from the trust to one Baker with no restrictions in regard to the number of residences allowed; that on October 10, 1972, the trustee conveyed a tract of land directly above the Baker property to one Hahn with the restriction that only one house per acre be permitted on the property. Various deeds were attached to plaintiffs' motion for summary judgment including the January 29, 1952, deed to the Millers, the May 9, 1952, deed to the Fowlers, the July 26, 1949, deed to Rullman, the January 18, 1952, deed to the Willmans, the October 1, 1955, deed to the Craigs, the January 3, 1966, deed from a subsequent owner of the Craig property to the Osinskis; the October 10, 1972, deed from the trust to the Hahns and the August 25, 1954, deed from the trust to Baker. The various conveyances in the area referenced as part of Guild's Subdivision on exhibit "A" and the attached

deeds contain substantially similar restrictions except for the fact, as indicated, that the first three conveyances had the two-residence restriction rather than the one which appeared in later conveyances and with some changes in the restrictions as to the size of the homes to be built. As indicated, the Hahn conveyance had the one dwelling per acre restriction and substantially different restrictions directed at what might be characterized as "horse properties." The Baker deed contains no restrictions. Where the restrictions appear in the deeds they are expressly made binding upon the heirs and assigns of the grantee.

■■ Those who seek to enforce a restriction have the burden of proving a clear intention to benefit their properties. (*Housing Authority v. Church of God* (1948), 401 Ill. 100, 108; *Punzak v. DeLano* (1957), 11 Ill. 2d 117, 119-20. See generally Annot., 51 A.L.R.3d 556, 578-79 (1973).) "The right to enforce this restriction upon the use of the land is based, not upon the agreement made by the subsequent purchaser, but upon the theory that each purchaser buying a lot with notice of a general plan of improvement impliedly assents thereto and can be compelled to comply therewith at the suit of the owner of any other lot, without reference to the order in which the lots were sold." (*Wiegman v. Kusel* (1915), 270 Ill. 520, 523. See also *Wayne v. Baker* (1955), 6 Ill. App. 2d 369, 374.) The intention of the restriction to benefit other properties must be found "from the language of the deed itself, considered in connection with the circumstances ° ° ° not by secret intentions ° ° °." (*Hays v. St. Paul Methodist Episcopal Church* (1902), 196 Ill. 633, 636.) The significant factors bearing upon the existence of a general plan have been stated to include the presence of the restriction in identical language in every deed and express language in the deed showing that the restriction was intended to be binding upon successors and assigns. (*Henricks v. Bowles* (1958), 20 Ill. App. 2d 148, 151.) A general plan may exist, however, "even though there are complete omissions of restrictions in some of the lots in the area affected by the plan." *Wayne v. Baker* (1955), 6 Ill. App. 2d 369, 374; see also *Metcoff v. Dahlquist* (1929), 252 Ill. App. 222, 228.

⊙2 It is axiomatic that a motion for summary judgment should not be granted if there is a genuine issue as to any material fact. (See, *e.g.*, *Carruthers v. Christopher & Co.* (1974), 57 Ill. 2d 376, 380.) We conclude that based on the applicable principles of law, the trial court erred in awarding summary judgment based on the premise that only a question of law was involved. The fact that the first three conveyances from the trust in the immediate area of plaintiffs' property were by deeds containing a two-residence restriction does not, by itself, preclude a finding that a general scheme or plan existed and was intended to be binding upon future grantees. (See *Wayne v. Baker* (1955), 6 Ill. App. 2d

369, 373.) In *Wayne v. Baker* we focused on the circumstances of the uniformity in restrictions over a given period of time which showed the apparent intent of the grantor to create a common plan even though there were several inconsistent prior conveyances. Moreover, the record before us does not show if all of the remaining lots in part of Guild's Subdivision following the conveyance to the plaintiffs were limited to one residence per lot and whether they contained essentially the same language of restrictions found in the earlier deeds, inasmuch as the deeds to the various defendants are not part of this record. Plaintiffs' exhibit "A" shows dimensions for the various tracts conveyed from the trust; but the record does not address itself to the possibility that there might or might not be topographical or other circumstances which could explain the subjecting of lots of little variance in size to the different dwelling limitations. It has been noted that the number of variances from a common scheme is not determinative of whether the plan is general, but rather the question is whether the variances have destroyed the purpose of the common scheme. (See *Hayes v. Gibbs* (1946), 110 Utah 54, 61-62, 169 P.2d 781, 785.) In this connection, also, the question of the scope of the common plan, whether it encompassed all property in the trust, such as the larger Hahn tract, with a one-acre residential restriction, and the even larger Baker tract, conveyed without restrictions, are matters which may depend on factual determination both as to the relationship to the subject property and the basis for a different treatment.

We therefore reverse the judgment and remand the cause with directions to the trial court to proceed to an evidentiary hearing consistent with this opinion.

Reversed and remanded.

LINDBERG and UNVERZAGT, JJ., concur.